JUDGE BUCHWALD   11   CV   2662

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| INTERNATIONAL CHAUFFEURED SERVICE, INC. | ) ) ) ) | |
| Plaintiff, | ) ) ) | Case No COMPLAINT |
| vs. | ) ) | |
| FAST OPERATING CORP., d/b/a CARMEL CAR & LIMOUSINE SERVICE, and JOHN DOES 1-100, | ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) ) | |

RECEIVED
APR 19 2011
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff International Chauffeured Service, Inc. ("1-800-Book-A-Limo"), by its attorneys, for its complaint against Defendants Fast Operating Corp., d/b/a Carmel Car & Limousine Service ("Carmel"), and John Does 1-100, alleges as follows:

**JURISDICTION AND VENUE**

1.    This Court has federal question jurisdiction over this action under the provisions of 18 U.S.C. § 1030 because the Complaint alleges violation of the Computer Fraud and Abuse Act.

2.    This Court has supplemental jurisdiction over the claims in this Complaint that arise under state statutory and common law of the State of New York pursuant to 28 U.S.C. § 1367 (a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

3. This Court has personal jurisdiction over Defendants and venue is proper under 28 U.S.C. § 1391(b) in this Court.

## PARTIES

4. International Chauffeured Service, Inc. is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business at 53 E. 34th Street, New York, NY 10016. International Chauffeured Service, Inc. was formed on March 19, 2007, and is the successor-in-interest to 1-800-Book-A-Limo, Inc., a Delaware Corporation formed on January 8, 1999.

5. Upon information and belief, Fast Operating Corp. is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 2642 Broadway, New York, NY, 10025. Fast Operating Corp. was formed on September 20, 1984.

## FACTUAL BACKGROUND

6. Since 1999, 1-800-BOOK-A-LIMO has owned and operated a car reservation service, which connects its partner drivers with passengers who visit its website (http://www.bookalimo.com), or call its telephone reservation system (1-800-BOOK-A-LIMO).

7. 1-800-BOOK-A-LIMO offers a high quality chauffeured luxury global limousine service by integrating advanced technology with highly skilled service professionals. 1-800-BOOK-A-LIMO was an Internet pioneer, developing the first national limousine rental Web site, located at www.1800bookalimo.com. 1-800-BOOK-A-LIMO currently has thousands of accounts with limousine companies across the country, and serves hundreds of thousands of customers each year.

8.    To provide its customers with price quotes, 1-800-BOOK-A-LIMO has built and maintained a detailed database consisting of countless permutations of different pick-up and drop-off locations throughout the United States and the world (the "1-800-BOOK-A-LIMO Database"). The 1-800-BOOK-A-LIMO Database also contains the prices for a ride between each such pick-up and drop-off location.

9.    In or about late 2007 or early 2008, Carmel approached 1-800-BOOK-A-LIMO about a potential purchase of 1-800-BOOK-A-LIMO's business, however, Carmel opted not to pursue the transaction further.

10.    Upon information and belief, at some point in 2009, Carmel began operating a nationwide chauffeured car service. Carmel's service competed directly with 1-800-BOOK-A-LIMO by matching customers with drivers across the country. Carmel's competing service also relied on a database of pick-up and drop-off locations, as well as pricing information for each ride (the "Carmel Database").

11.    When 1-800-BOOK-A-LIMO first learned about Carmel's competing service, and confronted Carmel about copying the 1-800-BOOK-A-LIMO Database, Carmel denied that it had copied its competitor's database.

12.    1-800-BOOK-A-LIMO recently became aware that the Carmel Database is a carbon copy of 1-800-BOOK-A-LIMO's proprietary database. The Carmel Database contains pick-up locations and abbreviations that were copied verbatim from the 1-800-BOOK-A-LIMO Database. Such entries were entered by 1-800-BOOK-A-LIMO data entry personnel over a period of more than ten years, and include typos, abbreviations, and colloquial references to geographical locations. The Carmel Database matches the 1-800-BOOK-A-LIMO Database word-for-word and typo-for-typo, with the exception

of entries for New York, New Jersey, and Connecticut, where Carmel already did business and had its own database.

13. The 1-800-BOOK-A-LIMO Database also contains confidential and proprietary pricing information for every pick-up and drop-off location in the database, compiled at significant expense over a period of more than a decade. It would have taken Carmel years and millions of dollars to compile similar information on its own.

14. Upon information and belief, Carmel obtained unlawful and unauthorized access to the 1-800-BOOK-A-LIMO Database, which database was on a restricted and proprietary server, and copied the entire database.

15. Upon information and belief, Carmel has used, and is using the 1-800-BOOK-A-LIMO Database to compete directly for business with 1-800-BOOK-A-LIMO.

16. The 1-800-BOOK-A-LIMO Database gave 1-800-BOOK-A-LIMO a competitive advantage over Carmel and any other potential competitors in the national chauffeured car rental business. By copying the 1-800-BOOK-A-LIMO Database, Carmel has unfairly and illegally appropriated 1-800-BOOK-A-LIMO's proprietary trade secrets and gained an unfair competitive advantage.

17. Upon information and belief, Carmel's willful and deliberate theft of the 1-800-BOOK-A-LIMO Database has cost 1-800-BOOK-A-LIMO substantial business, in an amount not less than $5,919,781.00.

## COUNT 1

## VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT
## 18 U.S.C. 1030(g)

11. 1-800-BOOK-A-LIMO incorporates herein by this reference each and every allegation contained in each paragraph above.

12. The 1-800-BOOK-A-LIMO Database resides on a server which 1-800-BOOK-A-LIMO controls (the " 1-800-BOOK-A-LIMO Server"). Only three 1-800-BOOK-A-LIMO managers have the necessary credentials to access the database.

13. By virtue of providing price quotes for limousine reservations in tens of thousands of locations across fifty states, the 1-800-BOOK-A-LIMO Server is involved in interstate commerce, and is thus a protected computer under the CFAA.

14. At no time and under no circumstances was Carmel authorized to access the 1-800-BOOK-A-LIMO Server.

15. Due to the identical nature of factual and non-factual details in the two databases, Carmel must have copied the 1-800-BOOK-A-LIMO Database by gaining unauthorized access to the 1-800-BOOK-A-LIMO Server.

16. Carmel's unauthorized accessing of the Server was motivated by an intent to defraud 1-800-BOOK-A-LIMO by acquiring its valuable 1-800-BOOK-A-LIMO Database.

17. As a result of Carmel's unauthorized accessing of the 1-800-BOOK-A-LIMO Server, 1-800-BOOK-A-LIMO has suffered economic losses of at least $5,000 in the past year due to efforts to investigate and remedy the effects of Carmel's unauthorized access on the 1-800-BOOK-A-LIMO Server.

18.  In total, Carmel's unauthorized accessing of the 1-800-BOOK-A-LIMO Server has caused 1-800-BOOK-A-LIMO to suffer damages in an amount not less than $5,919,781.00.

## COUNT 2
## MISAPPROPRIATION OF TRADE SECRETS

19.  1-800-BOOK-A-LIMO incorporates herein by this reference each and every allegation contained in each paragraph above.

20.  Only the three managers previously mentioned above have sufficient access to the 1-800-BOOK-A-LIMO Database to make an automated copy of the database in its entirety.  None of those managers provided Carmel, or any other party, with access to the 1-800-BOOK-A-LIMO Database.

21.  The 1-800-BOOK-A-LIMO Database is an extremely valuable asset for 1-800-BOOK-A-LIMO because it enables 1-800-BOOK-A-LIMO to quickly provide price quotes to potential customers and eliminates the need to check with the partner drivers to establish pricing each and every time a customer inquires into making an online reservation.

22.  The 1-800-BOOK-A-LIMO Database is also extremely valuable to Carmel. By misappropriating the 1-800-BOOK-A-LIMO Database, Carmel was able to shortcut years of effort and expense, and roll out a fully functioning nationwide chauffeured car service in a fraction of the time, and at a fraction of the cost, that it would otherwise have required.

23. The 1-800-BOOK-A-LIMO Database allows Carmel to offer potential customers a comprehensive listing of pick-up and drop-off locations, and to know what prices to charge, based on what its only nationwide competitor is charging.

24. 1-800-BOOK-A-LIMO has expended considerable amounts of money, time, and effort since 1999 to develop the 1-800-BOOK-A-LIMO Database and acquire the data contained therein.

25. Carmel knew or should have known that the 1-800-BOOK-A-LIMO Database constituted a trade secret of 1-800-BOOK-A-LIMO.

26. Because Carmel was never authorized to access the proprietary 1-800-BOOK-A-LIMO Database, Carmel either acquired the 1-800-BOOK-A-LIMO Database by improper means or received it from a third party, knowing that it was a trade secret, and knowing that such third party either acquired it by improper means or was breaching a duty to 1-800-BOOK-A-LIMO by disclosing it to Carmel.

27. As a result of Carmel's misappropriation of 1-800-BOOK-A-LIMO's trade secret, 1-800-BOOK-A-LIMO has been damaged in an amount not less' than $5,919,781.00.

## COUNT 3

### UNFAIR COMPETITION

28. 1-800-BOOK-A-LIMO incorporates herein by this reference each and every allegation contained in each paragraph above.

29. 1-800-BOOK-A-LIMO restricts access to the 1-800-BOOK-A-LIMO Database to three managers. Carmel unlawfully obtained access to that database, and

made an unauthorized copy, which Carmel then used to compete against 1-800-BOOK-A-LIMO.

30. The 1-800-BOOK-A-LIMO Database is extremely valuable. By misappropriating the 1-800-BOOK-A-LIMO Database, Carmel was able to shortcut years of effort and expense, and to roll-out a fully functioning nationwide chauffeured car service in a fraction of the time, and at a fraction of the cost, that it would otherwise have taken.

31. The 1-800-BOOK-A-LIMO Database allows Carmel to offer potential customers with a comprehensive listing of pick-up and drop-off locations, and to know what prices to charge, based on what it's only nationwide competitor is charging.

32. Carmel's theft of the 1-800-BOOK-A-LIMO Database gave it an unfair competitive advantage over its competitor, allowing Carmel to shave 11 plus years and millions of dollars off of the time and cost that it would have required to develop a database on its own.

33. 1-800-BOOK-A-LIMO has expended considerable amounts of money, time, and effort since 1999 to develop the 1-800-BOOK-A-LIMO Database and acquire the data contained therein.

34. Because Carmel was never authorized to access the proprietary 1-800-BOOK-A-LIMO Database, Carmel either acquired the 1-800-BOOK-A-LIMO Database by improper means or received it from a third party, knowing that it was 1-800-BOOK-A-LIMO's database, and knowing that such third party either acquired it by improper means, or was breaching a duty to 1-800-BOOK-A-LIMO by disclosing it to Carmel.

35.   As a result of Carmel's unfairly competing against 1-800-BOOK-A-LIMO, 1-800-BOOK-A-LIMO has been damaged in an amount not less than $5,919,781.00.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants Awarding 1-800-BOOK-A-LIMO:

1.      actual damages in the amount of $5,919,781.00, stemming from violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g);

2.      actual damages in the amount of $5,919,781.00, due to misappropriation of trade secrets,

3.      actual damages in the amount of $5,919,781.00, due to unfair competition,

4.      punitive damages, and

6.      such other relief as the Court deems just and equitable under the circumstances.


Dated:  April 18, 2011

                                        Respectfully submitted,

                                        Lewis & Hand, LLP

                                        _____
                                        Brett E. Lewis  (BL6812)

                                        Attorneys for Plaintiff
                                        INTERNATIONAL CHAUFFEURED
                                        SERVICE, INC.

## DEMAND FOR TRIAL BY JURY

Please take notice that Plaintiff, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, hereby demands trial by jury for all issues so triable.


Dated:  April 18, 2011.


Respectfully submitted,


Lewis & Hand, LLP


Brett E. Lewis

Attorney for Plaintiff
INTERNATIONAL CHAUFFEURED
SERVICE, INC.